
DA 07-0587

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 161

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

JOHN W. TAYLOR,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Petroleum, Cause No. DC 06-01
Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Penelope S. Strong, Billings Legal, PLLC, Billings, Montana

      For Appellee:

      Hon. Steve Bullock, Montana Attorney General; David Ole Olson, Assistant
Attorney General, Helena, Montana

      Monte J. Boettger, Petroleum County Attorney, Lewistown, Montana

Submitted on Briefs:  September 24, 2008

Decided:  May 13, 2009

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 John Taylor was convicted of theft of a trailer in the District Court of the Tenth Judicial District, Petroleum County. He appeals. We restate and discuss the issues raised as follows:

¶2 1. Did the District Court commit plain error by failing to *sua sponte* declare a mistrial or change the place of trial?

¶3 2. Did the District Court err in denying Taylor's challenge to a prospective juror?

¶4 3. Does the record on direct appeal show that Taylor's trial counsel was ineffective?

BACKGROUND

¶5 Taylor is the former sheriff of Petroleum County, which is Montana's least populated county. According to a newspaper article in the record which is dated January 23, 2007, Petroleum County had 314 registered voters and a jury selection pool of approximately 100 citizens.

¶6 In July of 2006, a neighbor of rural Petroleum County resident Dennis Carmony, reported that Carmony's car-hauler trailer, which had been parked at Carmony's farm, was missing. Carmony, who was then out of state, contacted Taylor in Taylor's capacity as Petroleum County Sheriff and reported his trailer had apparently been stolen. However, at that time, Taylor did not make a report that the trailer was missing.

¶7 Taylor was terminated as sheriff on October 5, 2006.[1] On October 20, 2006, his

---

[1] Petroleum County utilizes the commission-manager form of county government. Under this form of county government the Sheriff is not elected. Rather, he is hired by and reports to a county

successor entered the missing trailer into a national stolen vehicle database. Shortly thereafter, Taylor was arrested in Utah driving a U-Haul truck which was towing Carmony's missing trailer.

¶8 Taylor was charged by information with theft for stealing Carmony's trailer. He was arraigned and pled not guilty. Taylor moved for change in the place of trial on the ground that he was well known as the previous sheriff of Petroleum County who had been fired and that there was substantial local prejudice against him. The District Court denied the motion.

¶9 The case was tried to a Petroleum County jury on April 23 and 24, 2007. Among others, Taylor challenged prospective juror Meserve for cause. The District Court denied the challenge to prospective juror Meserve and Taylor exercised a peremptory challenge to remove him. Taylor exercised all of his peremptory challenges. The jury found Taylor guilty of theft by unauthorized control, a violation of § 45-6-301(1)(a), MCA.

¶10 Upon request, Taylor's trial counsel withdrew on August 13, 2007. Taylor was sentenced September 10, 2007. Taylor is represented by new counsel on appeal.

## STANDARDS OF REVIEW

¶11 This Court may in its discretion review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made, where failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial, or may

---

manager who, under the direction of the county commission, may terminate his employment. Sections 7-3-301, 303, 304(13), MCA.

compromise the integrity of the judicial process. *State v. Davis*, 2003 MT 341, ¶ 19, 318 Mont. 459, 81 P.3d 484.

¶12 We review a trial court's denial of a challenge for cause to determine whether the trial court abused its discretion. *State v. Herman*, 2009 MT 101, ¶ 17, 350 Mont. 109, 204 P.3d 1254; *State v. Normandy,* 2008 MT 437, ¶ 13, 347 Mont. 505, 198 P.3d 834. If a district court abuses its discretion in denying a challenge for cause, the defendant uses a peremptory challenge to remove the challenged juror, and also exercises all of his peremptory challenges, we will reverse the judgment and order a new trial. *Herman*, ¶ 17; *State v. Robinson*, 2008 MT 34, ¶ 7, 341 Mont. 300, 177 P.3d 488.

¶13 A claim of ineffective assistance of counsel presents mixed questions of law and fact which we review *de novo*. *State v. Russell*, 2008 MT 417, ¶ 32, 347 Mont. 301, 198 P.3d 271.

## DISCUSSION

¶14 *Issue 1: Did the District Court commit plain error by failing to* sua sponte *declare a mistrial or change the place of trial?*

¶15 Taylor claims on appeal that it was plain error for the District Court not to declare a mistrial or change the place of trial because of prejudicial comments made by prospective jurors which were heard by the entire venire panel.

¶16 Taylor first points to a comment by prospective juror Meserve:

PROSECUTOR: Well, that will be a conclusion, I suppose, that the jury as a whole has to make as well but specifically what you have heard do you think that there is anything about that that has made an impression upon you or set

4

your mind in a certain fashion that you don't believe you could be fair and impartial and judge this case?

MESERVE: I cannot answer that honestly because I know from what I understand from Dennis that the man perjured himself and—

¶17 Taylor argues the prejudicial effect of this statement was then compounded by "opinions and references" made by two prospective jurors who were also county commissioners. These two prospective jurors said they had discussed the case with witnesses who were expected to testify and that because of those conversations they felt they might not be fair jurors. These prospective jurors did not state what they had heard or what their opinions were.

¶18 No motion for a mistrial was made. Nor was the motion to change the place of trial renewed. The plain error doctrine is to be employed sparingly, on a case-by-case basis, considering the totality of the circumstances of each case. *Davis*, ¶ 19. We conclude that the comments made during voir dire did not result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process.

¶19 *Issue 2: Did the District Court err in denying Taylor's challenge to a prospective juror?*

¶20 A juror may be challenged for cause if the juror has a state of mind in reference to the case or to the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party. Section 46-16-115(2)(j), MCA. In determining whether to grant a challenge for cause, the court must examine both the

5

statutory language and the totality of the circumstances. *Normandy*, ¶ 22. If voir dire raises serious doubts about the ability to be fair and impartial the juror should be removed. *Herman*, ¶ 25; *Normandy*, ¶ 22. However, a district court does not have to remove a prospective juror for cause just because the juror has heard something about the case or expresses concerns about remaining impartial but believes that he or she will fairly weigh the evidence. *Herman*, ¶ 28; *State v. Braunreiter*, 2008 MT 197, ¶ 10, 344 Mont. 59, 185 P.3d 1024. To determine whether a serious question has arisen regarding a prospective juror's ability to be fair and impartial, we review his or her responses as a whole. *State v. Harville*, 2006 MT 292, ¶ 9, 334 Mont. 380, 147 P.3d 222; *State v. Golie*, 2006 MT 91, ¶ 10, 332 Mont. 69, 134 P.3d 95.

¶21 Taylor complains the District Court erred in denying his challenge for cause to prospective juror Meserve. He argues the record shows Meserve was biased because he had talked with Carmony about the missing trailer. The prosecutor questioned him as follows:

> PROSECUTOR: Mr. Meserve, the same question for you. Do you think there is anything about your dealings with Mr. Taylor that would make it difficult for you to sit in judgment here today in this trial?
>
> MESERVE: Not if that's what the evidence said.
>
> .  .  .
>
> PROSECUTOR: Well, that will be a conclusion, I suppose, that the jury as a whole has to make as well but specifically what you have heard do you think that there is anything about that that has made an impression upon you or set your mind in a certain fashion that you don't believe you could be fair and impartial and judge this case?
>
> MESERVE: I cannot answer that honestly because I know from what I understand from Dennis that the man perjured himself and—

6

PROSECUTOR: Now--now, we don't want to get into anything specifically but I guess my only response, Mr. Meserve, is, as I—and I will keep harping on this, that the only thing that we will be able—that any of us will be able to rely upon in this case is what you hear in the Courtroom. It doesn't matter what you have heard. It doesn't matter what the rumor was or even anything about that, anything you have read--only what you hear in the Courtroom and what the Judge instructs you on the law. Do you think you can do that?

MESERVE: Well, I guess if you are doing your job I can.

PROSECUTOR: I will try. Now, ladies and gentlemen, I don't want to be coy about this. It's real important. It's very important for the State that we have jurors come into this thing with an open mind. We don't want anybody with a preconceived notion about guilt or innocence and so that's why my questions to Mr. Meserve and I appreciate him bringing that up and I will come back to you in a little bit and we will—we will iron that out but if you don't feel because of what you know that there is any way you can be fair and impartial either to the Defendant or to the State then I—I need to know that.
     You think you can be fair and impartial and render a verdict on the evidence, Mr. Meserve?

MESERVE: If that's what the evidence shows I can be.

.     .     .

PROSECUTOR: . . . . We have covered a lot of ground. Is there anybody that's in that situation where they don't feel that they could be fair and impartial?

.     .     .

PROSECUTOR:  Mr. Meserve?

MESERVE: I guess so if that's what the evidence says.  It's going to be a little tough.

¶22     Defense counsel also questioned potential juror Meserve:

DEFENSE COUNSEL: You also indicated earlier, I think, in response to the prior questions that you had some concerns about your discussions[–]

MESERVE: A little bit, yes.

7

DEFENSE COUNSEL: And would you agree with me that it would be a little bit—would you want to be—have Mr. Taylor on the same jury if you were charged with this offense?

MESERVE: I don't believe it would make much difference. Depends on what comes out of that box up there where the people are talking out of.

.    .    .

DEFENSE COUNSEL: Mr. Meserve, you are a friend of Dennis Carmony; is that correct?

MESERVE: Yes, sir.

DEFENSE COUNSEL: I hate to beat the same horse but I want to know whether or not you can truly put aside your friendship for him and make an independent non-biased decision based on what you hear from that chair right there.

MESERVE: Well, it ain't like we are married. I am not[−] If the evidence comes out I can do it.

DEFENSE COUNSEL: You would do it?

MESERVE: Yes.

¶23   Meserve stated he had heard from Carmony that Taylor had perjured himself. He did not say he had formed an opinion that Carmony was correct. Meserve consistently stated he would make an independent, non-biased decision based on what the evidence showed. He made a commitment to consider only the evidence introduced at the trial.

¶24   Considering Meserve's responses as a whole, we conclude the District Court did not abuse its discretion in denying Taylor's challenge for cause to juror Meserve.

¶25   *Issue 3: Does the record on direct appeal show that Taylor's trial counsel was ineffective?*

8

¶26     To determine whether there was constitutionally ineffective assistance of counsel, we apply the two-prong test adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The test requires the defendant to prove (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense. *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. To determine whether counsel's performance was deficient, we must determine "whether counsel's conduct fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow*, ¶ 20.

¶27     Before applying the *Strickland* test, however, we must determine whether the claim for ineffective assistance of counsel is record-based. "Claims involving 'omissions of trial counsel frequently are ill-suited for direct appeal.'" *Russell*, ¶ 33 (quoting *State v. Meyers*, 2007 MT 230, ¶ 10, 339 Mont. 160, 168 P.3d 645).

> Generally, in addressing ineffective assistance of counsel claims we ask 'why' counsel did or did not perform as alleged and then seek to answer the question by reference to the record. If the record on appeal explains 'why,' we will then address the issue on appeal. If the claim is based on matters outside the record on appeal, we will refuse to address the claim and allow the defendant to file a postconviction proceeding where a record can be developed as to 'why' counsel acted as alleged, thus allowing the court to determine whether counsel's performance was ineffective or merely a tactical decision.

*State v. St. Germain*, 2007 MT 28, ¶ 34, 336 Mont. 17, 153 P.3d 591 (citing *State v. White*, 2001 MT 149, ¶ 20, 306 Mont. 58, 30 P.3d 340).

¶28     Taylor claims trial counsel was ineffective for numerous reasons: failure to renew a motion to change the place of trial, ineffective voir dire, failure to move to suppress

evidence, failure to argue certain issues at trial, failure to adequately cross-examine witnesses, improperly conceding the value element of the offense charged, and failing to offer an additional jury instruction. From the record before us, we cannot determine why Taylor's trial counsel acted as he did and whether counsel's performance was ineffective or merely a tactical decision. Thus, we will leave Taylor's claims of ineffective assistance of counsel to a postconviction proceeding, should he choose to commence such under Title 46, Chapter 21, MCA.

¶29 Affirmed, without prejudice to the assertion of a claim of ineffective assistance of counsel in a postconviction proceeding.

/S/ JOHN WARNER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON