DA 13-0306

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 129N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JEREMIAH ALLEN JOHNSON,

      Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District, In and For the County of Missoula, Cause No. DC 12-415 Honorable Robert L. Deschamps, III, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Joseph P. Howard, Attorney at Law, Great Falls, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

          Fred Van Valkenburg, Missoula County Attorney, Jennifer Clark, Deputy County Attorney, Missoula, Montana

                  Submitted on Briefs: April 16, 2014
                            Decided: May 13, 2014

Filed:

                                        Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Jeremiah Allen Johnson appeals from his conviction of the offenses of felony aggravated assault and felony assault with a weapon in the Fourth Judicial District Court, Missoula County. We affirm.

¶3     Johnson argues on appeal that the District Court abused its discretion by refusing to excuse a juror for cause, denying his motion for a mistrial, and failing to give a cautionary instruction about prior acts testimony.

¶4     Johnson was arrested on August 28, 2012, after his former girlfriend, Kelsey Rowland, called 911 to report that Johnson had hit her in the face while wearing hard-knuckled motorcycle gloves. He was charged with aggravated assault, assault with a weapon, criminal trespass to property, and driving with a suspended or revoked license. He was later charged with violation of an order of protection. He pled guilty to the latter three charges and proceeded to trial on the charges of aggravated assault and assault with a weapon.

¶5     During jury selection, defense counsel asked members of the jury if they believed police officers would be more credible than the defendant. Prospective juror Blevins voiced his opinion that "against any person I would say a police officer, to me, has a slightly greater

2

credibility." The defense challenged Blevins for cause, and he was excused by the District Court. Later, prospective juror Grogan said:

> I totally agreed with Mr. Blevins, that potential juror. Now that I'm older and out of trouble, with neighbors who are in law enforcement, I give them that level of credibility. Not to the detriment of the defendant, because I truly feel that a person is innocent until proven guilty.

Defense counsel asked whether the testimony of a police officer would have a higher level of credibility than testimony by the defendant. Grogan responded, "Higher, no. I would like to hear the evidence and judge it accordingly." The defense challenged Grogan for cause. The District Court asked Grogan, "In the courtroom, do you automatically think that the police start out with a—they're a little ahead of the game, just because they're the police?" Grogan answered, "I do not think that, Your Honor. Credibility, I give them that level of credibility because of their station and their training." The District Court denied the challenge to this juror.

¶6 At trial, Rowland testified that Johnson "had a GPS tracker thing." The defense objected. A bench conference was held, and Rowland did not refer to the "GPS tracker thing" again. She also testified that Johnson had approached her at work the week before August 28. The defense objected again. The defense argued that the prior contact, combined with the reference to a "GPS tracker thing," created the impression Johnson was stalking Rowland. Regarding the prior incident, Rowland testified:

> He wanted to talk again about us. And he just—he—I had asked him to please go, a couple of times, and he wouldn't. And I—he finally did end up leaving. And as he's leaving, he was yelling obscenities at me and told me that, "I won't be surprised if you got your ass kicked."

She said she did not see Johnson again until he showed up at her home on August 28. The

3

District Court did not give a cautionary instruction. The defense motion for a mistrial was denied.

¶7 Johnson claims the District Court erred by denying his challenge for cause to prospective juror Grogan. This Court reviews the denial of a challenge for cause to determine whether the trial court abused its discretion. *State v. Golie*, 2006 MT 91, ¶ 6, 332 Mont. 69, 134 P.3d 95. A juror may be challenged for cause if he or she has "a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party." Section 46-16-115(2)(j), MCA. If a juror is able to set aside his or her preconceptions and follow the law, it is within the discretion of the district court to determine whether that juror should be excused. *State v. Jay*, 2013 MT 79, ¶ 20, 369 Mont. 332, 298 P.3d 396. The district court "has the ability to look into the eyes of the juror in question, and to consider her responses in the context of the courtroom, and then determine whether serious doubts exist about the juror's ability to be impartial." *Jay*, ¶ 20 (quoting *State v. Robinson*, 2008 MT 34, ¶ 13, 341 Mont. 300, 177 P.3d 488, *overruled in part on other grounds*, *State v. Gunderson*, 2010 MT 166, ¶ 50, 357 Mont. 142, 237 P.3d 74). The juror's spontaneous and unprompted statements are the most meaningful, though the court or the parties may ask open-ended questions to clarify a juror's initial statements. *State v. Allen*, 2010 MT 214, ¶ 26, 357 Mont. 495, 241 P.3d 1045.

¶8 Grogan stated that he agreed with prospective juror Blevins, but went on to say, unprompted, that he did not believe law enforcement was entitled to heightened credibility to the detriment of the defendant. On further questioning, Grogan maintained that he did not

4

attribute higher credibility to law enforcement and would weigh the evidence fairly. The District Court was in a position to "look into the eyes" of each juror and determine whether his ability to be impartial was in doubt. The District Court did not abuse its discretion when it denied the challenge for cause to prospective juror Grogan.

¶9 Johnson also claims the District Court erred by denying his motion for a mistrial. The denial of a motion for mistrial is reviewed for abuse of discretion. *State v. Moree*, 2010 MT 148, ¶ 11, 357 Mont. 24, 235 P.3d 585. A mistrial is appropriate where there is a reasonable possibility that inadmissible evidence contributed to the conviction. *State v. Long*, 2005 MT 130, ¶ 24, 327 Mont. 238, 113 P.3d 290. The strength of the evidence against the defendant, the prejudicial effect of the inadmissible evidence, and whether that prejudice could be cured by a cautionary instruction are considered when determining whether the inadmissible evidence could have contributed to the defendant's conviction. *Long*, ¶ 24. In this case, Rowland's reference to a "GPS tracker thing" was brief, isolated, and vague. The testimony was not enough to indicate to the jury that Johnson was on probation. The jury could have drawn a variety of inferences from the testimony, or, given its brief nature, paid it no attention. The District Court appropriately avoided drawing any extra attention to the testimony. The District Court did not abuse its discretion by denying Johnson's motion for a mistrial.

¶10 Johnson's final claim of error is that the District Court should have given a cautionary instruction to the jury regarding Rowland's testimony that Johnson yelled obscenities and threatened her the week before August 28. A district court is given broad discretion when instructing a jury, and we review decisions regarding jury instructions for an

abuse of that discretion. *State v. Bieber*, 2007 MT 262, ¶ 22, 339 Mont. 309, 170 P.3d 444. The District Court ruled before trial that testimony regarding the parties' prior relationship was explanatory of the events of August 28 and would be admitted under the transaction rule. Section 26-1-103, MCA; *State v. Berosik*, 2009 MT 260, ¶ 46, 352 Mont. 16, 214 P.3d 776. The transaction rule "is most legitimately used to admit uncharged misconduct when such conduct arises from a continuing series of events." *State v. Guill*, 2010 MT 69, ¶ 45, 355 Mont. 490, 228 P.3d 1152. Acts considered part of the same transaction are not excluded under M. R. Evid. 404(b). *Berosik*, ¶ 45. Evidence admitted under the transaction rule need not be accompanied by a cautionary instruction. *See Guill*, ¶¶ 44-45. Rowland's testimony explained a "continuing series of events" in which Johnson tried to contact her to discuss their relationship, a series which continued when he let himself into her home on August 28. The evidence was properly admitted as part of the same transaction, and therefore no cautionary instruction was required. The District Court did not abuse its discretion by failing to give such an instruction.

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for memorandum opinions. The issues in this case are ones of judicial discretion, and there clearly was not an abuse of discretion.

¶12 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON

6

/S/ PATRICIA COTTER
/S/ JIM RICE